UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARONTA T. LEWIS,<br><br>    Plaintiff,<br><br>    v.<br><br>A. FRENCH, et al.,<br><br>    Defendants. | Case No. 23-cv-02505-AMO (PR)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO AMEND; OF PARTIAL DISMISSAL WITH LEAVE TO AMEND; SERVING COGNIZABLE CLAIMS; SETTING BRIEFING SCHEDULE; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS** |

## I. INTRODUCTION

Plaintiff Daronta T. Lewis, a state prisoner, filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations at Salinas Valley State Prison ("SVSP"), where he was previously incarcerated. Lewis seeks injunctive relief and monetary damages. He paid the full filing fee. Dkt. 24.

Before the Court are numerous motions filed by Lewis, including motions for: leave to file an amended complaint; the Court to screen the amended complaint; a preliminary injunction; a referral to early settlement proceedings; leave to join state law tort claims; appointment of counsel; and an "emergency" issuing of an injunction. Dkts. 13, 17, 18, 29, 31, 32, 46, 47.

For the reasons outlined below, the Court **GRANTS** the motion for leave to file an amended complaint and for the Court to screen the amended complaint, **PARTIALLY DISMISSES** certain claims, **ORDERS** service of the cognizable claims in the amended complaint, sets a briefing schedule, and addresses all other remaining pending motions.

The Court first addresses Lewis's numerous pending motions and then screens the amended complaint pursuant to 28 U.S.C. Section 1915A(a).

## II. LEWIS'S PENDING MOTIONS

### A. Motion for Leave to Amend

A plaintiff may amend his complaint once as a matter of course at any time before a responsive pleading is served. *See* Fed. R. Civ. P. 15(a). Where a plaintiff seeks to amend after a responsive pleading has already been served, however, the decision whether to grant leave to amend is committed to the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). Federal Rule of Civil Procedure 15(a) is to be applied liberally in favor of amendments and, in general, leave shall be freely given when justice so requires. *Janicki Logging Co. v. Mateer,* 42 F.3d 561, 566 (9th Cir. 1994). The Court notes that the defendants in this action have not yet been served. Thus, Lewis may amend his complaint as a matter of course because a responsive pleading has not yet been served. *See* Fed. R. Civ. P. 15(a).

Accordingly, Lewis's motions for leave to file an amended complaint are **GRANTED**. Dkts. 13, 17. The Clerk of the Court shall docket the document attached to the earlier-filed motion to amend, label it as Lewis's "Amended Complaint," and mark it as filed on June 22, 2023, the date it was received. Dkt. 13 at 4-56. Lewis's motion for the Court to screen the amended complaint under 28 U.S.C. § 1915A is also **GRANTED**. Dkt. 31.

### B. Motion for Appointment of Counsel

Lewis has filed a motion for appointment of counsel. Dkt. 46. There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). The court may seek counsel to represent an indigent litigant under 28 U.S.C. § 1915 only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits, and (2) the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* at 1525; *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Both of these factors must be viewed together before reaching a decision on a request for counsel under section 1915. *See id.* The Court is unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a *pro bono* appointment. The

2

1  proceedings are at an early stage and it is premature for the Court to determine Lewis's likelihood
2  of success on the merits. Accordingly, Lewis's request for appointment of counsel is **DENIED**
3  without prejudice.[1]  Dkt. 46.

### C. Motion for a Preliminary Injunction

Lewis has also filed a motion for a preliminary injunction as well as a request for an "emergency" issuing of an injunction. Dkts. 18, 47. Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction or temporary restraining order ("TRO"). Prior to granting a preliminary injunction, notice to the adverse party is required. *See* Fed. R. Civ. P. 65(a)(1). Therefore, a motion for preliminary injunction cannot be decided until the parties to the action are served. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). A TRO may be granted without written or oral notice to the adverse party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the applicant's attorney certifies in writing the efforts, if any, which have been made to give notice and the reasons supporting the claim that notice should not be required. *See* Fed. R. Civ. P. 65(b). Because the parties to this action have not yet been served, and Lewis has failed to satisfy either of the criteria under Rule 65(b) for granting a TRO without notice to the adverse parties, *id.*, the motions are **DENIED** (Dkts. 18, 47).

### D. Motion for a Referral to Early Settlement Proceedings

Finally, Lewis's motion for a referral to early settlement proceedings is **DENIED** as premature. Dkt. 32. At this early point in the litigation and without a stipulation by the parties to referring the action to a magistrate judge for settlement, it would be premature for the Court to order the parties to attend a settlement conference.

---

[1] The Court may of course consider appointing of counsel later in the proceedings; that is, after defendants have filed their dispositive motion. At that time, the Court will be in a better position to consider the procedural and substantive matters at issue. Lewis may therefore file a renewed motion for the appointment of counsel after defendants have been served and their dispositive motion has been filed.

3

### III. AMENDED COMPLAINT SCREENING

The Court now conducts its initial review of the amended complaint pursuant to 28 U.S.C. § 1915A. Venue is proper in this judicial district because the events giving rise to Lewis's claims in his amended complaint are alleged to have occurred at SVSP, which is located in this district. *See* 28 U.S.C. § 1391(b).

#### A. Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

#### B. Analysis

Lewis's amended complaint, which is the operative complaint in this action, is a three-page "Summary of Complaint" and a fifty-page attachment. While it is difficult to decipher the attachment because Lewis has included both handwritten and typewritten pages[2] in an unorganized fashion, the Court focuses on the March 13, 2023 incident outlined in his "Summary of Complaint," and the claims relating to this incident.

Lewis names the following as defendants in both their official and individual capacities:

---

[2] The Court notes that Lewis has attached typewritten pages from what seems to be a court order, which he has crossed out and attempted to adopt as part of his amended complaint. *See* Dkt. 13 at 20-30. Such an attachment is confusing and his inconsistent markings make it difficult for the Court to determine how his allegations are related to his claims. *See id.* Thus, the Court focuses only on the handwritten portions with claims that seem to relate to his allegations in the "Summary of Complaint" section. *See id.*

the California Department of Corrections and Rehabilitation ("CDCR"); Governor Gavin Newsom; CDCR Director Connie Gipson; CDCR Secretary Ralph Diaz; SVSP Warden Trent Allen; SVSP Americans with Disabilities Act ("ADA") Associate Warden E. Borla; SVSP Lt. M. Beresoria; SVSP Captain Lomelli; SVSP Sergeant Williams; and SVSP Transportation Officers A. French, Escobedo, F. Vitela, Ventura, "John Doe 1" and "John Doe 2." Dkt. 13 at 4-5, 13, 16, 17.[3] As mentioned, Lewis seeks injunctive relief and monetary damages as relief. *Id.* at 53-55.

Lewis alleges that he is confined to a wheelchair (since 2017) and considered "disabled under the [ADA.]" *Id.* at 5, 10. Lewis further avers that he is "wheelchair bound due to gunshot injuries and wears a neck brace, back brace, an[d] left arm sling." *Id.* at 5. He adds that he "cannot use the left side of his body, and [he] cannot walk." *Id.* He was incarcerated at SVSP beginning on January 27, 2023, and at least until April 2023. *Id.* at 13.

Lewis claims that on March 13, 2023 at 1:25 p.m., Defendants French and Escobedo recklessly, intentionally, and deliberately created an unsafe and dangerous condition by refusing to provide Lewis with a seatbelt in an ADA van. *Id.* at 5. Specifically, Defendants French and Escobedo picked him up in the ADA van to drive him to the Correctional Triage Center for a physical therapy appointment. *Id.* Defendant French loaded Lewis and his wheelchair onto the ADA van, and Lewis told him that he "was not buckled and the wheelchair was not strapped in." *Id.* Lewis claims that the "[d]efendant said 'just throw on your wheelchair brakes[.]'" *Id.* Defendant French "drove the [ADA] van recklessly and crashed, tipping [Lewis] forward out of the wheelchair injuring his head, neck, chest, elbow, left shoulder, wrist, back, hip, and knee." *Id.* Lewis claims that the officers "said they heard a noise from the back only after the van stopped." *Id.* Lewis adds that the officers "admitted they did not buckle or strap [him] in." *Id.* Defendant French explained "what had happened" to Registered Nurse ("RN") Lalahs, a non-party. *Id.* Lewis states that he was "dazed," and he "mumbled, 'wasn't strapped . . . got hurt.'" *Id.* RN Lalahs called the "supervisors or the doctors down the hall to physically examine [Lewis]." *Id.* at 5-6. SVSP staff sent Lewis to the hospital "for treatment, x-rays and CAT scans to his head and

---

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Lewis.

neck . . . ." *Id.* at 6. Lewis claims he had "no broken bones." *Id.*

Lewis filed a 602 inmate appeal "to get relief from SVSP transport officer(s) [such as] A. French from continuing to discriminate against [Lewis] as [Defendant French] did . . . ." *Id.* at 41.

Within the attachment to the amended complaint, Lewis refers to another incident on April 9, 2023, involving Defendants French, Ventura, and Vitela. *Id.* On April 9, 2023, Defendant French ordered Defendant Ventura to "get in the back of the ADA van with [Lewis]," stating: "Fuck any safety or securement belts . . . hold on to [Lewis's] shoulder & wheelchair . . . we out." *Id.* Lewis responded, "You can't . . . I [am] going to file [an] *Armstrong* 602 [inmate appeal form] again!!!" Defendant French said, "Fuck ADA again we covered. If you get hurt we covered." *Id.* at 41-42. Lewis claims that Defendant Ventura and Vitela failed to intervene, and specifically "allowed the retaliatory ride as speed limits w[ere] exceeded." *Id.* at 42. Lewis adds that "[he] and the officer [were] thrown side[-]to[-]side and with [a] jolting[,] bumpy ride over lumpy premises [on the] road way [which] threw [Lewis] up & down causing fear for [his] life[,] health & safety." *Id.* Lewis experienced chest pains and "urinated on [him]self." *Id.* Upon exiting the ADA van, Lewis claims he was "shook up" and Defendant French said, "Fuck ADA. I don't care write what you want again now that's what you get . . . I'm covered." *Id.*

### 1. Official Capacity Claims

Lewis has sued all named defendants individually and in their official capacities seeking monetary relief. Dkt. 13 at 5. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Unless waived, the Eleventh Amendment bars a federal court award of damages against a state, state agency, or state official sued in an official capacity. *Id.* at 169. As there has been no waiver here, Lewis's claims against the named defendants in their official capacities for monetary damages are **DISMISSED WITH PREJUDICE**.

### 2. Individual Capacity Claims

#### a. Eighth Amendment Claim

Lewis claims that on March 13, 2023, Defendants French and Escobedo caused him to be injured when they recklessly, intentionally, and deliberately created an unsafe and dangerous

6

1  condition when they refused to provide Lewis with a seatbelt when transporting him in an ADA
2  van. Dkt. 13 at 5-6. Lewis also claims that Defendant French created similar dangerous
3  conditions on April 9, 2023 when he refused to provide Lewis with a seatbelt and drove recklessly
4  in excess of the speed limit, causing Lewis to have chest pains and urinate on himself. *Id.* at 41-
5  42. Lewis claims that Defendants Ventura and Vitela failed to intervene during the April 9, 2023
6  incident. *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue. . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." *Hudson*, 503 U.S. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious. . . ." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk

7

1    by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid

2    liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence

3    of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the

4    part of the prison official is not sufficient to establish liability, but rather, the official's conduct

5    must have been wanton. *See Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

6    Here, the Court finds that Lewis states a cognizable conditions of confinement claim

7    against Defendants French, Escobedo, Ventura and Vitela, in violation of the Eight Amendment.

### b. Disability Discrimination Claim

9    Lewis alleges that he suffered discrimination based on his disability during the March 13,

10   2023 incident. Dkt. 13 at 48-50.

### 1) Cause of Action

12   Title II of the ADA and Section 504 of the Rehab Act prohibit discrimination on the basis

13   of a disability in the programs, services or activities of a public entity. Federal regulations require

14   a public entity to "make reasonable modifications in policies, practices, or procedures when the

15   modifications are necessary to avoid discrimination on the basis of disability, unless the public

16   entity can demonstrate that making the modifications would fundamentally alter the nature of the

17   service, program or activity." 28 C.F.R. § 35.130(b)(7).

18   The elements of a Title II claim are: (1) the plaintiff is an individual with a disability;

19   (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public

20   entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in

21   or denied the benefits of the public entity's services, programs or activities, or was otherwise

22   discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

23   discrimination based on the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.

24   2002). A cause of action under section 504 essentially parallels an ADA cause of action. *See*

25   *Olmstead v. Zimring*, 527 U.S. 581, 590 (1999); *Duvall v. Cty of Kitsap*, 260 F.3d 1124, 1135 (9th

26   Cir. 2001).

### 2) Proper Defendant

28   The proper defendant for a claim under Title II of the ADA and section 504 is the public

8

1    entity responsible for the alleged discrimination.  *See Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th

2    Cir. 2009) (collecting cases); *but cf. Eason v. Clark Cty Sch. Dist.*, 303 F.3d 1137, 1145 (9th Cir.

3    2002) (declining to decide the issue).  Title II of the ADA does not create a right of action against

4    a public official acting in their individual capacity.  *Everson*, 556 F.3d at 501.  A plaintiff also

5    cannot assert a claim under 42 U.S.C. § 1983 against defendants in their individual capacities to

6    vindicate rights created by the ADA or the Section 504.  *See Vinson v. Thomas*, 288 F.3d 1145,

7    1156 (9th Cir. 2002).

8           Here, the proper defendant on Lewis's disability discrimination claim is the public entity

9    that allegedly denied him equal access to its programs: the CDCR.  State correctional facilities are

10   "public entities" within the meaning of the ADA.  *See* 42 U.S.C. § 12131(1)(A)&(B);

11   *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124

12   F.3d 1019, 1025 (9th Cir. 1997).  State prisons that receive federal financial assistance are covered

13   by the Rehabilitation Act.  *See Armstrong*, 124 F.3d at 1022-23.  As state agencies, these entities

14   are shielded from suit in federal court unless they waive their sovereign immunity or Congress has

15   validly abrogated their sovereign immunity in the applicable statute.  *See Kentucky v. Graham*,

16   473 U.S. 159, 167 n.14 (1985).  *In Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356

17   (2001), the Supreme Court held that Congress did not have the power to abrogate the States'

18   Eleventh Amendment immunity under Title I of the ADA, but declined to decide whether

19   Congress validly abrogated the States' immunity as to Title II.  *Id.* at 360 n.1.  The Court

20   specifically noted that Title II has remedial provisions different than those in Title I.  *Id.*

21          For purposes of initial review, the Court assumes that the CDCR does not enjoy Eleventh

22   Amendment immunity with respect to Lewis's ADA claim.  As to the Rehabilitation Act, the

23   Ninth Circuit has held that, "[b]ecause California accepts federal funds under the Rehabilitation

24   Act, California has waived any immunity under the Eleventh Amendment" as to that Act's anti-

25   discrimination provisions.  *See Clark v. State of California*, 123 F.3d 1267, 1271 (9th Cir. 1997);

26   *see also Douglas v. California Dep't of Youth Authority*, 271 F.3d 812, 819 (9th Cir.), *amended*,

27   271 F.3d 910 (9th Cir. 2001) (adhering to *Clark* after Supreme Court's decision in *Garrett*).

28          Lewis therefore may pursue his ADA and § 504 claim against the CDCR for monetary

1   damages and prospective injunctive relief, but only if he successfully states a cognizable disability
2   discrimination claim.

### 3) Analysis of Disability Discrimination Claim

Lewis claims that he is an individual with qualifying disabilities because he is wheelchair-bound due to gunshot injuries. Dkt. 13 at 5, 48. Even if Lewis's amended complaint is construed to state that he is an individual with a qualifying disability, his disability discrimination claim cannot proceed because, when liberally construed, he has not alleged any discriminatory conduct and thus fails to state a cognizable claim for relief under Title II of the ADA. Specifically, Lewis alleges in a conclusory fashion that based on the March 13, 2023 incident, the CDCR failed to provide him with "any transport aids/devices *because of* [his] disability." Dkt. 13 at 50 (emphasis added). He adds, "[t]hus no securement safety" and "interference with ADA [and] RA rights." *Id.* At most, Lewis's claim is based on only two instances (March 14, 2023 and April 9, 2023), and he makes conclusory arguments the CDCR carried out such discrimination based on his disability. *Id.* Such allegations are insufficient. Additionally, Lewis does not allege that he was treated differently than similarly situated non-disabled inmates. Furthermore, Lewis may not request punitive damages if he wishes to sue under Title II of the ADA. *See Barnes v. Gorman*, 536 U.S.181, 189 (2002). Accordingly, Lewis's ADA and Section 504 claims against the CDCR are **DISMISSED WITH LEAVE TO AMEND.** He may reassert his claims against the CDCR in a second amended complaint if he can in good faith allege that prison personnel discriminated against him on the basis of his disability.

### c. Equal Protection Claim

Lewis attempts to raise an equal protection claim, but such a claim has deficiencies that require the Court to dismiss it with leave to amend. Dkt. 13 at 29, 39. As an initial matter, Lewis fails to name a specific defendant to link to such a claim. *Id.* He alleges that "defendants acted with an intent or purpose to discriminate against [him] based upon membership of a protected class." *Id.* at 29. In addition, it appears that Lewis is not alleging a violation of equal protection based on race or other suspect classification, but on a "class of one" claim. Where state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish an

10

equal protection "class of one" claim by alleging facts from which it can be inferred that the state actor intentionally treated him differently than other similarly situated persons without a rational basis. *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1020 (9th Cir. 2011) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). This Lewis has not done. In light of the deficiencies stated above, Lewis's equal protection claim is **DISMISSED WITH LEAVE TO AMEND** so that Lewis can name a proper defendant, and allege sufficient facts to show that the defendant intentionally treated him differently than other similarly situated persons without a rational basis.

### d. Retaliation Claim

Lewis alleges that Defendant French's denying him a seatbelt on April 9, 2023 was in retaliation against him for filing a grievance after the March 13, 2023 incident, in violation of the First Amendment. Dkt. 13 at 41 to 47. To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016). Lewis has stated a cognizable First Amendment retaliation claim against Defendant French. *See* Dkt. 13 at 41-42.

Lewis has not stated a cognizable constitutional claim against Defendants Ventura and Vitela, whose names are also listed under the section of his amended complaint relating to his retaliation claim. *See id*. Lewis's factual allegations regarding Defendants Ventura's and Vitela's motivation for failing to intervene rely on inferences gleaned by Lewis and are, at best, speculative. Because it appears possible that Lewis may be able to correct this deficiency, the Court will **DISMISS WITH LEAVE TO AMEND** this First Amendment claim against Defendants Ventura and Vitale. If Lewis chooses to amend and re-plead his retaliation claim against Defendants Ventura and Vitale, he must proffer enough facts to state a plausible claim that these Defendants failed to intervene on April 9, 2023 as a result of Lewis's constitutionally protected activity.

### e. Supervisory Liability Claim

Lewis names multiple Defendants in his amended complaint whom he apparently sues in their supervisory capacity. Among them are Governor Newsom, CDCR Director Gipson, CDCR Secretary Diaz, SVSP ADA Associate Warden Borla, SVSP Lt. Beresoria, SVSP Captain Lomelli, and SVSP Sergeant Williams. Lewis does not allege facts demonstrating that these Defendants violated his federal rights, but seems to claim they are liable based on the conduct of their subordinates. There is, however, no respondeat superior liability under section 1983 solely because a defendant is responsible for the actions or omissions of another. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

Lewis's claims against the aforementioned supervisory defendants are therefore **DISMISSED WITH LEAVE TO AMEND**. He may file a second amended complaint that alleges supervisory liability of these supervisory defendants under the standards explained above.

### f. Claims Against Doe Defendants

Regarding Defendants John Does 1&2, Lewis describes them as "SVSP Transportation Officer[s]," who "have been consciously aware of discrimination prior to 3/13/2023 allegations set forth in this complaint with enough [time] to implement safeguards to prevent a retaliatory follow up by correctional officer defendants in this complaint for a substantial period of time." Dkt. 13 at 13. Lewis states that he does know these Doe Defendants' names. *Id.* Although the use of "John Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wiltsie v. Cal. Dep't of Corr.*, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the identity of alleged defendants cannot be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover

their identities or that the complaint should be dismissed on other grounds. *See Gillespi*e, 629 F.2d at 642; *Velasquez v. Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986). Lewis's claims against the Doe Defendants are **DISMISSED WITH LEAVE TO AMEND**. He must provide to the Court the names of Defendants John Does 1&2 by the date scheduled in this Order for any served Defendant to file a dispositive motion, and he must link these Defendants to his cognizable claims. Failure to do so will result in dismissal of Defendants John Does 1&2 *without prejudice to Lewis filing new actions against them once their names are known.*

### g. State Law Claims

Lewis alleges that SVSP Warden Allen and the CDCR, who he claims are the "ADA van owners/operators," acted with negligence and reckless operation of the van on March 18, 2023 and April 9, 2023 when he was injured while he was a passenger on the ADA van because officials refused to provide him with seatbelts. Dkt. 13 at 31-33.

The federal supplemental jurisdiction statute provides that "'district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 28 U.S.C. § 1367(a).

Lewis asserts supplementary state law claims that the actions of Defendants Allen and the CDCR were negligent. Liberally construed, Lewis's allegations satisfy the statutory requirement. Accordingly, the Court will exercise supplemental jurisdiction the aforementioned state law negligence claim. Thus, the Court also **GRANTS** Lewis's motion for leave to join his state law tort claims. Dkt. 29. However, the Court construes this request to only include his aforementioned cognizable negligence claim, which he states multiple times in his amended complaint. *Compare* Dkt. 13 at 31-33 *with* 33-34. Because the Court finds that Lewis does not allege any other cognizable state law tort claims, such claims are **DISMISSED** for failure to state a claim for relief. Such a dismissal is with leave to amend, and Lewis may reassert them, if he can do so in good faith, in a second amended complaint.

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Lewis's motions for leave to file an amended complaint are **GRANTED**. Dkts. 13, 17. The Clerk shall docket the document attached to the earlier-filed motion to amend, label it as Lewis's "Amended Complaint," and mark it as filed on June 22, 2023, the date it was received. Dkt. 13 at 4-56. Lewis's motion for the Court to screen the amended complaint under 28 U.S.C. § 1915A is also **GRANTED**. Dkt. 31.

2. Lewis's request for appointment of counsel is **DENIED** without prejudice. Dkt. 46.

3. Lewis's motion for a preliminary injunction as well as a request for an "emergency" issuing of an injunction are **DENIED**. Dkts. 18, 47.

4. Lewis's motion for a referral to early settlement proceedings is **DENIED** as premature. Dkt. 32.

5. The Court also **GRANTS** Lewis's motion for leave to join his state law tort claims. Dkt. 29

6. Lewis's claims against the named defendants in their official capacities for monetary damages are **DISMISSED WITH PREJUDICE**.

7. Lewis states a cognizable Eighth Amendment conditions of confinement claim against Defendants French, Escobedo, Ventura and Vitela, and a cognizable retaliation claim against Defendant French. Lewis also asserts the supplementary state law claim that the actions of Defendants Allen and the CDCR were negligent. Liberally construed, Lewis's allegations satisfy the statutory requirement as to his negligence claim. All other federal and state law tort claims are **DISMISSED WITH LEAVE TO AMEND**, and Lewis may reassert them, if he can do so in good faith, in a second amended complaint.

8. Lewis's claims against the Doe Defendants are **DISMISSED WITH LEAVE TO AMEND**. He must provide to the Court the names of Defendants John Does 1&2 by the date scheduled in this Order for any served Defendant to file a dispositive motion, and he must link these Defendants to his cognizable claims. Failure to do so will result in dismissal of Defendants

1  John Does 1&2 *without prejudice to Lewis filing new actions against them once their names are
2  known.*

3        9.        The Court **DISMISSES WITH LEAVE TO AMEND** Lewis's disability
4  discrimination claim, equal protection claim, retaliation claim against Defendants Ventura and
5  Vitela, supervisory liability claim, claims against the Doe Defendants, and any other state law tort
6  claims. If Lewis chooses to file a second amended complaint, he must file the second amended
7  complaint within **twenty-eight (28) days** of the date of this Order. The second amended
8  complaint must include the caption and civil case number used in this Order, Case No. 23-cv-
9  02505-AMO (PR) and the words "SECOND AMENDED COMPLAINT" on the first page. Lewis
10 must use the Court's complaint form and answer all the questions on the form in order for the
11 action to proceed. Because the second amended complaint completely replaces the previous
12 complaints, Lewis must include in his second amended complaint *all* the claims he wishes to
13 present, including any amended claims as well as the Eighth Amendment, retaliation and
14 negligence claims, which the Court has found to be cognizable. *See Ferdik v. Bonzelet*, 963 F.2d
15 1258, 1262 (9th Cir. 1992). Lewis may not incorporate material from the prior complaints by
16 reference. Failure to file a second amended complaint in accordance with this Order in the time
17 provided will result in the following: (1) the dismissal of Lewis's disability discrimination claim,
18 equal protection claim, retaliation claim against Defendants Ventura and Vitela, supervisory
19 liability claim, claims against the Doe Defendants, and any other state law tort claims; (2) the
20 amended complaint (Dkt. 13) remaining the operative complaint; and (3) this action proceeding in
21 accordance with this Order.

22        10.        The following defendant(s) shall be served: **the CDCR; as well as SVSP Warden**
23 **Trent Allen and SVSP Transportation Officers A. French, Escobedo, F. Vitela, and Ventura**
24 **at SVSP**. Service on the listed defendant(s) shall proceed under the California Department of
25 Corrections and Rehabilitation's ("CDCR") e-service program for civil rights cases from prisoners
26 in CDCR custody. In accordance with the program, the Clerk is directed to serve on CDCR via
27 email the following documents: the amended complaint (dkt. 13), this Order, a CDCR Report of
28 E-Service Waiver form, and a summons. The Clerk also shall serve a copy of this Order on the

plaintiff.

No later than **forty (40) days** after service of this Order via email on CDCR, CDCR shall provide the Court a completed CDCR Report of E-Service Waiver advising the Court which of the defendant(s) listed in this Order will be waiving service of process without the need for service by the United States Marshal Service ("USMS") and which of the defendant(s) decline to waive service or could not be reached. CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within **twenty-one (21) days**, shall file with the Court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-285 Form. The Clerk shall provide to the USMS the completed USM-285 forms and copies of this Order, the summons, and the operative complaint for service upon each defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

11. The defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires the defendants to cooperate in saving unnecessary costs of service of the summons and the operative complaint. If service is waived, this action will proceed as if the defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), the defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the CDCR provides a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office. (This allows a longer time to respond than would be required if formal service of summons is necessary.) If the defendants have not waived service and has instead been served by the USMS, then the defendants shall serve and file an answer within **twenty-one (21) days** after being served with the summons and operative complaint.

12. The defendants shall answer the operative complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

1       a.      No later than **sixty (60) days** from the date the answer is due, the defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[4] notice so that the plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under the new law of the circuit, in the rare event that a failure to exhaust is clear on the face of the operative complaint, the defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the operative complaint, the defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to the plaintiff shows a failure to exhaust, the defendants are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on the plaintiff.

      b.      The plaintiff's opposition to the dispositive motion shall be filed with the

---

[4] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

17

Court and served on the defendants no later than **twenty-eight (28) days** after the date on which the defendants' motion is filed.

    c.  The plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your operative complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradicts the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

    The plaintiff also is advised that—in the rare event that the defendants argue that the failure to exhaust is clear on the face of the operative complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents—documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your operative complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary

18

judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse the defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

          d.      The defendants shall file a reply brief no later than **fourteen (14) days** after the date the plaintiff's opposition is filed.

          e.      The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

13. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to the defendants to depose the plaintiff and any other necessary witnesses confined in prison.

14. All communications by the plaintiff with the Court must be served on the defendants or defendants' counsel, once counsel has been designated, by mailing a true copy of the document to them.

15. It is the plaintiff's responsibility to prosecute this case. The plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

16. Future requests for extensions of time must be submitted at least **seven (7) days prior** to the expiration of a deadline, as required by Section D.2 of the Court's Standing Order for Civil Cases.

17. The Clerk shall send Lewis a blank civil rights form along with a copy of this Order.

18. This Order terminates Docket Nos. 13, 17, 18, 29, 31, 32, 46, and 47.

**IT IS SO ORDERED.**

Dated: March 19, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**