UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARONTA T. LEWIS,

Plaintiff,

v.

A. FRENCH, et al.,

Defendants.

Case No. 23-cv-02505-AMO (PR)

**ORDER OF PARTIAL DISMISSAL; SERVING COGNIZABLE CLAIMS FROM SUPPLEMENTAL COMPLAINT; ADDRESSING ALL REMAINING MOTIONS; AND DIRECTIONS FOR PLAINTIFF NOT TO FILE ANY UNSOLICITED FILINGS OR SIMILAR DUPLICATIVE MOTIONS**

Re: Dkt. Nos. 183, 193, 194, 196, 197, 201, 203, 204, 205

## I.    INTRODUCTION

Plaintiff Daronta T. Lewis, a state prisoner currently incarcerated at Salinas Valley State Prison ("SVSP"), has filed the instant civil rights action pursuant to 42 U.S.C. § 1983, representing himself and alleging constitutional violations that took place at SVSP throughout 2023-2024.[1]  On March 19, 2024, the Court screened Lewis's amended complaint (Dkt. 13), issued its service order and found that, liberally construed, Lewis stated a cognizable Eighth Amendment claim against Defendants SVSP Transportation Officers A. French, Escobedo, F. Vitela, and Ventura, as well as a cognizable retaliation claim against Defendant French.  Dkt. 50 at 6-8, 11.  The Court also found that Lewis asserted a supplementary state law claim that the actions of Defendants SVSP Warden Trent Allen and the California Department of Corrections & Rehabilitation ("CDCR") were negligent, and that, liberally construed, Lewis's allegations satisfied the statutory requirement as to his negligence claim.  *Id.* at 13.  The Court dismissed with leave to amend all other federal and state law tort claims, and noted that Lewis "may reassert

---

[1] Lewis paid the filing fee for the current action.  Dkt. 24.  Thus, the Court terminated as moot Lewis's motions for leave to proceed *in forma pauperis.*  Dkts. 8, 11.

them, *if he can do so in good faith*, in a second amended complaint ['SAC']." *Id.* at 14 (emphasis added).

Before the Court are Lewis's renewed motions for leave to file a SAC and for expedited screening of the SAC, (Dkt. 183), as well as multiple other motions, including a renewed motion for appointment of counsel (Dkt. 203) and duplicative motions for leave to amend, "joinder" and expedited ruling (Dkts. 193, 194, 196, 197, 201, 204, 205). For the reasons outlined below, the Court issues this order disposing of Lewis's pending motions.

## II.    BACKGROUND

Lewis is a prolific filer,[2] who has filed multiple cases in this Court. Lewis originally filed Case No. 23-cv-04394-AMO (PR) on August 24, 2023. Case No. 23-cv-04394-AMO (PR), Dkt. 1. Lewis then filed the instant action, Case No. 23-cv-02505-AMO (PR), on May 23, 2023. Dkt. 1. On March 19, 2024, the Court found that Lewis's allegations in his amended complaint in the instant action stated the following cognizable claims: an Eighth Amendment claim against Defendants French, Escobedo, Vitela, and Ventura; a retaliation claim against Defendant French; and a supplementary state law claim that the actions of Defendants Allen and the CDCR were negligent. *See* Dkt. 50 at 6-8, 11, 13. The Court also granted Lewis leave to amend his claims within twenty-eight days, and his failure to do so would result in: (1) the dismissal of Lewis's disability discrimination claim, equal protection claim, retaliation claim against Defendants Ventura and Vitela, supervisory liability claim, claims against the Doe Defendants, and any other state law tort claims; (2) the amended complaint (Dkt. 13) remaining the operative complaint; and (3) this action proceeding in accordance with the March 19, 2024 Order. *Id.* at 15.

Lewis filed a motion to consolidate Case Nos. 23-cv-04394-AMO (PR) and the instant action on May 23, 2024, which the Court granted on January 2, 2025. Dkts. 74, 129. Lewis claimed that "[b]oth civil cases are against [the] CDCR . . . for almost similar/same issues [and against the] same Defendants including more higher ranking officials." Dkt. 74 at 1.

On December 13, 2024, Lewis filed another action, Case No. 24-cv-08714-AMO (PR),

---

[2] The Court notes that this action was opened on March 23, 2023, and to date there are over 200 filings in this action.

along with a motion to consolidate that action with the present action, Case No. 23-cv-02505-AMO (PR). Dkts. 2, 13. Lewis claimed that the "lawsuits are similar and/or claims are the same or alike and I motion this court to combine this lawsuit against A. French et al with other lawsuit." Case No. 24-cv-08714-AMO (PR), Dkt. 74 at 1. The Court compared both actions, which stem from similar allegations: that throughout March 2023 to July 2024 Defendants caused Lewis to be injured by recklessly, intentionally, and deliberately causing unsafe and dangerous conditions when refusing to provide him with a seatbelt while transporting him. *Compare* Dkt. 13 at 4-5, 13, 16, 17 with Case No. 23-cv-4394-AMO (PR), Dkt. 1 at 15-24[3]. Thus, the Court granted Lewis's motion to consolidate Case No. 24-cv-08714-AMO (PR) into Case No. 23-cv-02505-AMO (PR), and closed Case No. 24-cv-08714-AMO (PR) as improvidently filed. *See* Case No. 24-cv-08714-AMO (PR), Dkt. 24. The Court also directed the Clerk of the Court to file the complaint in Case No. 24-cv-08714-AMO (PR) (Case No. 24-cv-08714-AMO (PR), Dkt. 8) as the "Supplemental Complaint" in Case No. 23-cv-02505-AMO (PR). *Id.* at 2. The Clerk has since filed the 90-page document as the supplemental complaint in this action. Dkts. 200, 200-1.[4]

Lewis also filed leave to file a SAC (Dkt. 123) and requests for leave to amend to add his amended complaint in Case No. 23-cv-4394-AMO (PR) as an operative complaint in Case No. 23-cv-02505-AMO (PR) (Case No. 23-cv-4394-AMO (PR), Dkt. 44-1).

Defendants have filed an "Amended Consolidated Response to Plaintiff's Motions for Leave to File a [SAC,] and for Expedited Screening." Dkt. 195. In their response, Defendants argue as follows:

> Defendants oppose, in part, Plaintiff's motion for leave to file a SAC. Assuming the SAC that was lodged last year (ECF No. 123) is a complete copy, Defendants request that the Court screen the proposed SAC under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. Plaintiff's proposed SAC appears to contain new defendants, claims, and allegations that the Court did not previously screen or consider when it reviewed Plaintiff's First Amended

---

[3] The Court previously consolidated Case No. 23-cv-4394-AMO (PR) with Case No. 23-cv-02505 on January 1, 2025. *See* Case No. 23-cv-4394-AMO (PR), Dkt. 52.

[4] The supplemental complaint includes an 89-page complaint and Lewis's one-page declaration. *See* Dkts. 200, 200-1. However, the Clerk filed the supplemental complaint in two parts: Docket No. 200 (49 pages) and Docket No. 200-1 (41 pages). *See id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

Complaint. These claims and Defendants must be screened and the Court must order service on those claims before Plaintiff can proceed on them. The SAC also appears to contain allegations that were previously dismissed with prejudice or would otherwise be futile to include in an amended pleading. Plaintiff also includes *Monell* allegations against Defendants Allen, French, Escobedo, and Ventura. But those Defendants are immune from suit under the Eleventh Amendment and Plaintiff may not sue them under a *Monell* theory of liability, so amendment would be futile. Further, at least one of the currently-named Defendants (Defendant Aguilera) no longer appears to be named as a defendant in the SAC and would need to be terminated as a party. Accordingly, Defendants request the Court deny Plaintiff's request to amend to add those claims. To the extent the Court is inclined to grant Plaintiff leave to amend and to proceed on the lodged SAC, Defendants request that the Court screen the SAC under 28 U.S.C. § 1915A at whatever speed the Court determines would be appropriate.

Dkt. 195 at 1-2.

### III.    MOTIONS TO AMEND COMPLAINT

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007) (citations and internal quotation marks omitted). The decision to grant or deny a request for leave to amend rests in the discretion of the trial court. *See California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).

Lewis filed his proposed SAC in the instant matter on September 19, 2024. Dkt. 123. Thereafter, he filed his amended complaint in Case No. 23-cv-04394-AMO (PR) on October 24, 2024. Case No. 23-cv-04394-AMO (PR), Dkt. 44-1. On December 13, 2024, Lewis filed his complaint for Case No. 24-cv-08714-AMO (PR), and his motion to consolidate that case with the instant matter (Case No. 24-cv-02505-AMO (PR)) on December 23, 2024. Case No. 24-cv-08714-AMO (PR), Dkts. 8, 13. In an Order dated August 25, 2025 in Case No. 24-cv-08714-AMO (PR), the Court granted Lewis's motion to consolidate bother actions and directed the Clerk to file the December 13, 2024 complaint in Case No. 24-cv-08714-AMO (PR) as the "Supplemental Complaint" in Case No. 23-cv-02505-AMO (PR). *See* Case No. 24-cv-08714-AMO (PR), Dkt. 24 at 2. As mentioned above, the Clerk has since filed it as the supplemental

4

complaint in this action. Dkts. 200, 200-1. The Court notes that the most recently filed amendment to the amended complaint is the December 13, 2024 supplemental complaint in this action. *See id.* As such, the Court construes all of Lewis's motions to amend in the instant action as a motion to treat Lewis's supplemental complaint (Dkts. 200, 200-1) as the operative complaint along with his amended complaint (Dkt. 13 at 4-56) and **GRANTS** that motion. For these reasons, Lewis's multiple requests for leave to amend his complaint, including his motions for leave to file a SAC and to amend to add his amended complaint in Case No. 23-cv-4394-AMO (PR) as an operative complaint in the instant action are **DENIED** as unnecessary, and his motions for joinder and expedited screening are **DENIED AS MOOT**. Dkts. 183, 193, 194, 196, 197, 201, 204, 205.

## IV. RENEWED MOTION FOR APPOINTMENT OF COUNSEL

On March 19, 2024, the Court denied Lewis's first motion for appointment of counsel. Dkt. 50 at 2-3. He has since filed a renewed request for appointment of counsel. Dkt. 203. There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (no constitutional right to counsel in section 1983 action), *withdrawn in part on other grounds on reh'g en banc*, 154 F.3d 952 (9th Cir. 1998) (en banc). The court may ask counsel to represent indigent litigants under 28 U.S.C. § 1915 only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits, and (2) the ability of plaintiffs to articulate their claims, representing themselves, considering the complexity of the legal issues involved. *See id.* at 1525; *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Both factors must be viewed together before reaching a decision on a request for counsel under section 1915. *See id.* Here, the Court remains unable to assess whether exceptional circumstances exist that warrant seeking volunteer counsel to accept a pro bono appointment, and it is premature for the Court to determine Lewis's likelihood of success on the

United States District Court
Northern District of California

merits.  Accordingly, Lewis's second request for appointment of counsel is **DENIED**.[5]  Dkt. 203.

## V.     REVIEW OF SUPPLEMENTAL COMPLAINT

The Court now conducts its initial review of the supplemental complaint pursuant to 28 U.S.C. § 1915A.  Venue is proper in this judicial district because most of the events giving rise to Lewis's claims in his complaint are alleged to have occurred at SVSP, which is located here.  *See* 28 U.S.C. § 1391(b).

In his supplemental complaint Lewis names as Defendants the following: the CDCR, Governor Gavin Newsom, SVSP Warden Trent Green; SVSP Warden Carlos Acre; SVSP Captain Lomeli , SVSP Lt. Beresario/Besorosia,[6] SVSP Associate Warden E. Borla; SVSP Associate Warden Medina; CDCR Director Connie Gipson; Associate Director H. Moseley; SVSP Director Ron Broomfield; CDCR Secretary Jeffrey McComber; SVSP Sergeant D. L. Williams and B. Galindo; Registered Nurse Bertelli; SVSP Transportation Officers J. Martinez, J. Garcia; Vallejo, S. Roach, J. Ortiz, Silva, Tanori, J. Lopez, Ricon, K. Bock and Cruiel.  Dkt. 200 at 3-18.[7]  In his amended complaint, Lewis had named Defendants CDCR, Allen, French, Escobedo, Vitela, and Ventura, as well as CDCR Secretary Ralph Diaz and "John Doe 1" and "John Doe 2."  Dkt. 13 at 4-5, 13, 16, 17.  Lewis seeks monetary and punitive damages.  Dkt. 200 at 39; Dkt. 200-1 at 39-40.

To review previous allegations from his amended complaint, the Court notes that Lewis alleged he has been confined to a wheelchair since 2017 and thus is considered "disabled under the Americans with Disabilities Act [('ADA')]."  Dkt. 13 at 5, 10.  Lewis further averred that he is "wheelchair bound due to gunshot injuries and wears a neck brace, back brace, an[d] left arm sling."  *Id.* at 5.  He added that he "cannot use the left side of his body, and [he] cannot walk."  *Id.*

---

[5] The Court may consider appointment of counsel at a later juncture in the proceedings, after Defendants have been served and filed their dispositive motion.  Once the Court has a better understanding of the procedural and substantive matters at issue and if it decides that appointment of counsel is warranted at that time, then it can seek *pro bono* counsel to agree to represent Lewis.

[6] The Court notes that Lewis spells Defendant Beresario/Besorosia's name both ways in his amended complaint and supplemental complaint.  *See* Dkts. 13, 200, 200-1.  Thus, the Court includes both spellings in this Order.

[7] Page number citations refer to those assigned by the Court's electronic case management filing system.

He was incarcerated at SVSP beginning on January 27, 2023, and at least until May 2025. *Id.* at 13; Case No. 24-cv-08714-AMO (PR), Dkt. 21.

Lewis claims that on March 13, 2023, Defendants French and Escobedo caused him to be injured when they recklessly, intentionally, and deliberately created an unsafe and dangerous condition when they refused to provide Lewis with a seatbelt when transporting him in an ADA van. Dkt. 13 at 5-6. Specifically, Defendant French loaded Lewis and his wheelchair onto the ADA van, and Lewis told him that he "was not buckled and the wheelchair was not strapped in." *Id.* Lewis claims that the "[d]efendant said 'just throw on your wheelchair brakes[.]'" *Id.* Defendant French "drove the [ADA] van recklessly and crashed, tipping [Lewis] forward out of the wheelchair injuring his head, neck, chest, elbow, left shoulder, wrist, back, hip, and knee." *Id.* Lewis adds that the officers "admitted they did not buckle or strap [him] in." *Id.*

Within the attachment to the amended complaint, Lewis refers to another incident on April 9, 2023, involving Defendants French, Ventura, and Vitela. *Id.* On April 9, 2023, Defendant French ordered Defendant Ventura to "get in the back of the ADA van with [Lewis]," stating: "Fuck any safety or securement belts . . . hold on to [Lewis's] shoulder & wheelchair . . . we out." *Id.* Lewis responded, "You can't . . . I [am] going to file [an] *Armstrong* 602 [inmate appeal form] again!!!" Defendant French said, "Fuck ADA again we [are] covered. If you get hurt we [are] covered." *Id.* at 41-42. Lewis adds that "[he] and the officer [were] thrown side[-]to[-]side and with [a] jolting[,] bumpy ride over lumpy premises [on the] roadway [which] threw [Lewis] up & down causing fear for [his] life[,] health & safety." *Id.* Lewis experienced chest pains and "urinated on [him]self." *Id.* at 42. As noted above, on March 19, 2024, the Court served a cognizable Eighth Amendment Claim against Defendants French, Escobedo, Ventura and Vitela as well as a retaliation claim against Defendant French for these incidents. Dkt. 50 at 7-8, 11.

In his supplemental complaint, Lewis alleges that Defendants participated in "illegal, customs, practices" and "recklessly disregard[ed] serious risk of serious harm" to his health by failing to properly secure his wheelchair. Dkt. 200 at 19. Lewis alleges that SVSP Warden, superiors, and subordinates continue "illegal practices and customs and don't care what [the] public knows." *Id.* Lewis also alleges Defendants acted with orders to, "continue as they do

United States District Court
Northern District of California

7

daily" by Defendants Allen, Borla, Lomeli, Moseley, Gipson, Beresario/Besorosia, Williams, and Galindo. *Id.* Specifically, in his declaration, Lewis alleges more incidents where Defendants "transported [him] inside of a state vehicle not being afforded any type of sea[]t be[]lt restraint when the vehicle is moving." Dkt. 200-1 at 41. He claims that "[n]ot being restricted in the moving vehicle has allowed the transporting officer[s] to not only drive recklessly, but makes [Lewis] bounce around inside of the vehicle and hit[] metal barriers and other pieces" causing him to suffer injuries. *Id.* Lewis claims that he has "been transported inside of these modified vans more than five times unsecured . . . [which] occur[ed] on" the following dates: January 27, 2023, January 28, 2023, March 13, 2023, April 9, 2023, April 10, 2023, May 1, 2023. May 11, 2023, May 17, 2023, June 2, 2024, and July 4, 2024.[8] *Id.*; Dkt. 200 at 19, 24, 32.

Aside from the March 13, 2023 incident from his amended complaint, Lewis alleges that on April 10, 2023, Defendants Garcia and Vallejo picked Lewis up to go to the Correctional Treatment Center ("CTC")[9] for physical therapy. *Id.* at 20. Lewis alleges the van did not have proper safety straps for his wheelchair and Defendants Garcia and Vallejo refused to find an alternative vehicle. *Id.* Lewis alleges Defendant Garcia drove recklessly, "gassing-hard stop[ping] . . . [s]harply turning corners and causing [Lewis] exacerbated injuries." *Id.* Lewis alleges that while Defendant Garcia was driving recklessly, Defendant Vallejo used his hands to restrain Lewis, causing "emotional distress, physical distress, mental anguish. PTSD to [f]lare up," as Defendant Vallejo's body hit Lewis in the head, metal dog cages hit Lewis's body, as well as Defendant Vallejo's body armor and weapons hit Lewis's body. *Id.* at 20-21. Lewis alleges Defendants knew of his "7 prior previously filed reasonable accommodation(s) requests and complaints for compliance . . . to perform dut[ies] to securely lock-in [and] strap down wheelchair upon inspection that all safety aids/devices are available, usable, and engaged," and they also

---

[8] The Court notes that while Lewis includes January 27, 2023, January 28, 2023 and June 2, 2024 as dates when he was transported unsecured and injured, he does not specify what happened during those transports. *See generally* Dkt. 13 at 4-56; Dkts. 200, 200-1.

[9] SVSP has a Correctional Treatment Center, which is more often referred to as "CTC," where inmates receive professionally supervised health care in an inpatient setting. *See* Details & History tab of https://www.cdcr.ca.gov/facility-locator/svsp/ (last visited December 23, 2025).

8

denied him medical and mental health care after the incident. *Id.* at 20.

Lewis alleges that after his physical therapy appointment on April 10, 2023, Defendant Beresario/Besorosia, who was the lieutenant on shift, was at the CTC desk talking to Defendant Roach regarding transporting Lewis back from CTC. *Id.* at 22. Lewis alleges Defendant Beresario/Besorosia told Defendant Roach "van[]s have 'no' disability aids [and] devices to safely transport [Lewis] securely." *Id.* And Defendant Roach "only said 'He needs just a van with a wheelchair lift.'" *Id.* Defendant Garcia, "who[] had brought [Lewis] to CTC for physical therapy said 'we don't got one available now.'" *Id.* Lewis alleges when a van with a wheelchair lift became available, Defendant Ricon transported Lewis with Defendant Bock as the driver, and passenger "Jhone [sic] Doe." *Id.* Lewis alleges Defendant Bock drove recklessly while Defendant Ricon "put his hands on [Lewis] offensively with enough force to cause pain on [his] preexisting vulnerable medical condition . . .brachial plexsus injury from gunshots . . . [and] wearing [a] neck brace—bullet exited [his] neck." *Id.* at 23. Defendant Roach "was driving recklessly, swerving with sharp turns as he [pressed the] brake suddenly then [the] gas suddenly and [drove] over [a] big lump in [the] road throwing [Lewis and Defendant Ricon]. *Id.* Defendant Ricon's "body armor [and] weapons [were] hitting [Lewis] with blunt force trauma-type pain, metal dog cages (human transport cages) swung [and] hit[] [him] in [the] face . . . hurting [him] . . . while [he was] cuffed and shackled defenseless . . . ." *Id.* at 23. Lewis alleges he was "denied medical, mental health care, treatment, as was custom, underground policy, so no injury reports were done." *Id.*

Lewis alleges that after the April 9 and 10 incidents, Defendant Cruiel joined during Emergency Response Vehicle ("ERV") transports on May 1, 2023. *Id.* at 25. Lewis alleges that during his transport to CTC medical on May 1, 2023, Defendant Cruiel "fail[ed] and refused to securely lock down wheelchair and floor mount it down and/or fail[ed] to seatbelt body strap [Lewis] in and against [his] will or consent offensively forcefully grip[p]ing [Lewis's] body[,] shoulder [and] lower neck area causing [him] pain . . . exacerbating [and] compounding [his] pre-existing injuries." *Id.* at 26. Lewis alleges Defendant Cruiel's "body armor hit [Lewis] busting [him] upside the head . . . [and Defendant Cruiel] allow[e]d the dog cages (human transport cages) to swing open and hit [Lewis] with blunt force trauma . . . failing/refusing to protect [him] while

United States District Court
Northern District of California

staying[,] 'Fuck nigger litigators . . . we at SVSP hate all of your kind and fuck the courts also who side with you.'" *Id.* Lewis alleges Defendant Cruiel uttered these racial slurs and comments as he "continued the ongoing illegal customs, practices, [and] patterns [of] recklessly operat[ing] vehicle[s] and den[ying] compliance with . . . safely and securement requirements." *Id.*

Lewis alleges that on May 1, 2023, Defendants Martinez, Garcia, Vitela and Bock "each came to [and] from CTC medical to pick [Lewis] up . . . and to drop [him] back off at [the prison]" and that Defendants Martinez and Garcia "violat[ed] [Lewis's] rights and injur[ed] [him] with whiplash disorder." *Id.* at 27. However, none of these Defendants filed a conduct report. *Id.* Lewis claims that Defendant Cruiel "denied [Lewis] medical [care] . . . [and] failed to summon medical care/service or report-reportable conduct . . . ." *Id.*

Lewis alleges on or about May 10 and/or 11, 2023, Defendant Tanori assisted Defendant Lopez, who was the ERV driver to and from the prison to CTC medical. *Id.* at 28. Lewis alleges he told Defendants Tanori and Lopez: "You all are aware this gurney needs to be locked down into [the] vans aids/devices to secure me from dangerous transport." *Id.* And Defendant Lopez responded,

> We heard about you . . . [and] [w]e have meetings about you daily . . . [b]ut we wasnt told were depriving you of no rights, and besides its more of us than you . . . so lay back[,] enjoy the wild, bumpy road ride of your life. Be free—live for a moment outside your boxed in cell life.

*Id.* Lewis further alleges Defendant Tanori agreed and said, "[W]e go to meetings daily about him—nothing was said about [how] we couldn[']t put our hands on him or to comply with safety security. So fuck him just load him up Lopez . . . hold him and his body." *Id.* at 29. Lewis told Defendants he did not want to be touched because he had "P.T.S.D. and was fear[ful] of police," and instead he needed a "safety belt" so they could "just strap and buckle [him] in." *Id.* But Defendants refused and did not secure Lewis's wheelchair. *Id.* Lewis claims that Defendant Tanori "aggressively held [Lewis] tight around [his] neck [and] shoulder . . . simultaneously one hand in the crook of [his] neck area [and] shoulder . . . standing on [one] side of [him] . . . [with the] side of [his] face press[e]d into [Defendant Tanori's] lower half female intimate parts." *Id.* Meanwhile, Defendant Lopez "refused/failed to intervene" and was "speeding, gassing, br[a]king,

10

[and] driving reckless[ly][,] compounding/exacerbating [Lewis's] . . . injuries . . . [as Defendant Tanori] smother[ed] [Lewis's] face with her lower intimate female part between her legs." *Id.* at 30. Lewis claims that Defendant Tanori then moved behind him and "held [him] from behind [and] the metal dog cages (human transport cages) . . . start[ed] hitting [him] in the face and hurting [him]. *Id.* Lewis complained that he was in "need of medical to be summoned and was denied," and Defendants Tanori and Lopez "drop[p]ed [him] off recklessly disregarding [his] health and safety needs." *Id.* at 31.

Lewis alleges during his May 17, 2023 medical transport, Defendant Martinez refused to secure Lewis's wheelchair, and Defendant Garcia drove recklessly causing Lewis to be injured. *Id.* at 32. Lewis alleges Defendant Martinez stated:

> [W]e heard about you . . . we have meetings daily in 'CTC' about you. Nothing's been said to be changed on your medical discharge orders [with] ADA-van with lift. But it don't specify we have to do as were required which is our duty to securely strap you down . . . we inspected the van [and] it's got no secure straps in here and the warden or A[ssociate] W[arden] or Captain of CTC, or our S[ergents] or L[ieutenants] are never on this van to enforce shit . . . so I'm going to make my job easier just hold you down myself without your consent. It's overridden by my exercising my abuse of authority.

*Id.* at 32-33. Defendant Garcia said "I concur[]." *Id.* at 33. Lewis also alleges Defendants Garcia and Martinez told Lewis, "We heard Tanori girl gave you some facetime-crotch time . . . ." *Id.* at 33. Lewis claims the reckless driving caused him injury because it thr[ew] [Defendant Martinez's] body, [Lewis] and [his] wheelchair into [the] metal dog (human) hold[ing] cages," and that Defendant Martinez's body armor and weapons "busted [Lewis] upside [his] head" causing "serious bodily injuries[,] knott[]s, pain, [and] blurred vision . . . . *Id.* at 32. Lewis asked for treatment for his injuries, but Defendants Garcia and Martinez denied his request. *Id.* at 33.

Lewis alleges "on or about 06/13/24 and/or 6/17/24," Lewis was being transported back from an outside medical hospital by Defendant French, against whom Lewis had filed civil lawsuits stemming from the incidents on March 13, 2023 and April 9, 2023. *Id.* at 34. Lewis claims that Defendant French came through the open sallyport and stated: "I'm gon[na] kill you— you['re] dead—we pay you and you['re] dead it's our history at SVSP." *Id.* at 35. Lewis alleges because of such threats, he "fears for his life and mostly refuse[s] yard [time] and tr[ies] to refuse

11

vehicle van rides to CTC medical from the chilling effect of [Defendant] French['s] credible threats against [him]." *Id.* at 36.

Finally, Lewis alleges that on July 4, 2024, he was "unconscious within minutes after chest pains" and "upon coming to" medical staff ordered him to go to CTC medical. *Id.* at 38. Defendant Bertelli assigned Defendants Oritz, Silva, and Garcia to transport Lewis, but they "denied [him] securement[,] flood mounting safety aids/devices to secure wheelchair . . . ." *Id.* Lewis complained to Defendant Bertelli that he was "having chest pains again, and a mental crisis," but she ignored him and told him to "go back to [his] 10 x 12 cell and sleep as well as [he] can with all the injuries [he] got already one more won't hurt." *Id.* Defendants Ortiz, Silva, and Garcia said "whiplash medical disorder[]s do[es]n't hurt [as] long as it takes to lock and secure [Lewis's] wheelchair down . . . in the back cargo transport area." *Id.* Lewis claims he told Defendants that he did not want to be touched, to no avail. *Id.* at 38-39. Instead, Lewis claims Defendant Ortiz "held [him] in [the] back of the van" and he was "thrown around in [a] rough ride [as the] vehicle [was driven] recklessly[,] willfully[,] intentionally to cause injury." *Id.* at 39. Defendant Bertelli refused to report the incident. *Id.* Lewis suffered chest pain and a mental breakdown. *Id.* Moreover, Lewis claims that Defendants Ortiz, Silva, Bertelli, and Garcia "told [him] like [Defendant] French said—remember it go[e]s on . . . you [are] not safe," which left Lewis "in fear for [his] safety, life [and] health." *Id.* at 36.

### 1.    Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). Pleadings submitted by self-represented plaintiffs must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that

12

the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, liability may be imposed on an individual defendant if the plaintiff can show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). A person deprives another of a constitutional right within the meaning of section 1983 if they engage in an affirmative act, participate in another's affirmative act or fail to perform an act which they are legally required to undertake, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (finding that a prison official's failure to intervene to prevent Eighth Amendment violation may be basis for liability). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer*, 844 F.2d at 633.

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "'Supervisory liability is imposed against a supervisory official in [their] individual capacity for [their] own culpable action or inaction in the training, supervision, or control of [their] subordinates, for [their] acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (citations omitted). Under no circumstances is there respondent superior liability under section 1983. *Taylor*, 880 F.2d at 1045.

Finally, Federal Rules of Civil Procedure Rule 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, Rule 8(e) requires that each averment of a pleading be "simple, concise, and direct." *See McHenry v.*

13

*Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (affirming dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").  While the federal rules require brevity in pleading, a complaint nevertheless must be sufficient to give the defendants "fair notice" of the claim and the "grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quotation and citation omitted).  A complaint that fails to state the specific acts of the defendant that violated the plaintiff's rights fails to meet the notice requirements of Rule 8(a).  *See Hutchinson v. United States*, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982).

### 2.    Legal Claims

#### a.    Official Capacity Claims

Lewis has sued Defendants Newsom and Broomfield in only their official capacities, and he has sued Defendants CDCR, Medina, Acre, Borla, Allen, McComber, Galindo, Moseley, Lomeli, Williams, and Beresario/Besorosia individually and in their official capacities seeking monetary relief.  Dkt. 200 at 3-18.  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Unless waived, the Eleventh Amendment bars a federal court award of damages against a state, state agency, or state official sued in an official capacity. *Id.* at 169.  As there has been no waiver here, Lewis's claims against all Defendants in their official capacities for monetary damages are **DISMISSED WITH PREJUDICE**.

#### b.    Individual Capacity Claims

##### i.    Eighth Amendment Claim

Lewis claims that Defendants caused him physical and emotional harm when they recklessly, intentionally, and deliberately failed to secure Lewis's wheelchair when transporting him in an ADA van during multiple incidents throughout 2023-2024, which lead him to suffer physical injuries, emotional distress, physical distress, and mental anguish. *See generally* Dkts 200, 201.  Lewis claims that Defendants continue illegal practices and customs under instructions from supervisors. *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of

confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue. . . ." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." *Hudson*, 503 U.S. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (quotations and citations omitted).

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious. . . ." *Farmer v. Brennan*, 511 U.S. 825, 834, (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *See Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128.

The Court previously found that Lewis has stated claims for relief under the Eighth Amendment against Defendants French, Escobedo, Ventura and Vitela, *see* Dkt. 50 at 7-8, and the Court now finds that Lewis's allegations in his supplemental complaint also state a cognizable

15

Eighth Amendment claim against Defendants Martinez, Garcia, Vallejo, Roach, Ortiz, Silva, Bertelli, Tanori, Lopez, Ricon, Bock, and Cruiel. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (prison official is deliberately indifferent if he or she knows that prisoner faces substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it).

### ii.    Retaliation Claim

Lewis alleges that Defendant French's threats in June 2024 while being transported back from an outside medical hospital by Defendant French, were in retaliation against him for filing civil lawsuits against Defendant French stemming from prior incidents on March 13, 2023 and April 9, 2023. Dkt. 200 at 34. Lewis claims that "on or about 06/13/24 and/or 6/17/24," Defendant French came through the open sallyport and stated: "I'm gon[na] kill you—you[']re dead—we pay you and your dead it's our history at SVSP." *Id.* at 35. Lewis alleges because of such threats, he "fear[ed] for his life and mostly refuse[d] yard [time] and tr[ied] to refuse vehicle van rides to CTC medical from the chilling effect of [Defendant] French[']s credible threats against [him]." *Id.* at 36. Lewis further claims that on July 4, 2024, Defendants Ortiz, Silva, Bertelli, and Garcia "told [him] like [Defendant] French said—remember it go[e]s on . . . you [are] not safe," which left Lewis "in fear for [his] safety, life [and] health." *Id.*

To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016).

Lewis had previously stated a cognizable constitutional claim against Defendant French,[10] and the Court finds Lewis has similarly stated a cognizable retaliation claim against Defendant French stemming from the June 2024 incident. However, Lewis's allegations regarding

_____

[10] As mentioned above, the Court found Lewis stated a cognizable retaliation claim against Defendant French in its March 19, 2024 Order stemming from the April 9, 2023 incident that satisfied the requirements for retaliation. *See* Dkt. 50 at 11.

Defendants Ortiz, Silva, Bertelli, and Garcia's motivation for their statements on July 4, 2024 are either unstated or, at best, speculative. Thus Lewis has not plausible alleged that these defendants acted on July 4, 2024, as a result of Lewis's constitutionally protected activity. Accordingly, any retaliation claim against Defendants Ortiz, Silva, Bertelli, and Garcia is **DISMISSED** for failure to state a plausible claim.

### iii.    Supervisory/Municipal Liability Claim

Lewis had originally named multiple Defendants in his amended complaint whom he apparently sues in their supervisory capacity, and among them were Governor Newsom, CDCR Director Gipson, CDCR Secretary Diaz, SVSP ADA Associate Warden Borla, SVSP Lt. Beresario/Besorosia, SVSP Captain Lomeli, and SVSP Sergeant Williams. Initially, Lewis did not allege facts demonstrating that these Defendants violated his federal rights, but he seemed to claim they are liable based on the conduct of their subordinates. In its March 19, 2024 service order, the Court noted: "There is, however, no respondeat superior liability under section 1983 solely because a defendant is responsible for the actions or omissions of another." Dkt. 50 at 12 (citing *Taylor*, 880 F.2d at 1045). The Court added: "A supervisor generally 'is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Id.*

In his supplemental complaint, Lewis has again named Defendants Newsom, Gipson, Borla, Beresario/Besorosia, Lomeli, and Williams, and has added new supervisory and municipal liability claims against Defendants Allen, Medina, Acre, Broomfield and McComber. *See* Dkt. 200 at 1-18, 46-49; Dkt. 200-1 at 1-5. Lewis has linked Defendants Allen, Borla, Lomeli, Moseley, Gipson, Beresario/Besorosia, Williams, and Galindo as supervisors who "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. Thus, the supervisory liability claims against Defendants Allen, Borla, Lomeli, Moseley, Gipson, Beresario/Besorosia, Williams, and Galindo are cognizable and may proceed. *See* Dkt. 200 at 21. But Lewis fails to link the remaining supervisory defendants, including Defendants Newsom, Diaz, McComber, Medina and Acre. And thus, the Court **DISMISSES** all supervisory liability claims against Defendants Newsom, Diaz, McComber, Medina and Acre

without further leave to amend for failure to allege supervisory liability under the standards explained above.

Lewis also has not alleged grounds for municipal liability against any named defendant based on any theory other than respondeat superior. This is not a sufficient ground for municipal liability. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (local governments cannot be liable under ' 1983 under respondeat superior theory). The Court **DISMISSES** all municipal liability claims against any named defendant without further leave to amend for failure to allege municipal liability under the standards explained above.

#### iv.     State Law Claims

Lewis alleges that Defendants French, Escobedo, Ventura, Vitela, Martinez, Garcia, Vallejo, Roach, Ortiz, Silva, Bertelli, Tanori, Lopez, Ricon, Bock, and Cruiel's alleged actions of deliberate indifference to Lewis's safety needs during his transport to and from CTC medical in 2023-2024 violate various provisions of California constitutional, statutory and tort law. The federal supplemental jurisdiction statute provides that "'district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" 28 U.S.C. § 1367(a). Liberally construed, Lewis's allegations satisfy the statutory requirement. Accordingly, the Court will exercise supplemental jurisdiction over Lewis's state law claims.

### VI.     DIRECTING LEWIS NOT TO FILE DUPLICATIVE/UNSOLICITED FILINGS

Throughout the course of these proceedings Lewis has submitted copious amounts of handwritten pleadings, motions, letters and other documents. The majority of these documents have been submitted at Lewis's own initiative and not in response to any Court order or pleading filed by Defendants. Absent extraordinary circumstances, there appears to be no need for Lewis to file further pleadings in this action until *after* (1) the Court instructs him to do so or (2) he has been served with Defendants' dispositive motion. This does not mean that Lewis is prohibited from filing additional pleadings, but the Court directs Lewis to refrain from filing duplicate documents or any similar unsolicited filings.

18

## VII.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.      The Court construes all of Lewis's motions to amend as a motion to treat Lewis's *most recently filed amended* complaint – the ***December 13, 2024*** supplemental complaint (Dkts. 200, 200-1) – as the operative complaint along with his amended complaint (Dkt. 13 at 4-56) and **GRANTS** the motion.  Lewis's multiple requests for leave to amend his complaint, including his motions for leave to file a SAC and to amend to add his amended complaint in Case No. 23-cv-4394-AMO (PR) as an operative complaint in the instant action are **DENIED AS MOOT**, as are his motions for joinder and expedited screening.  Dkts. 183, 193, 194, 196, 197, 201, 204, 205.  Accordingly, the operative complaints in this action are Lewis's amended complaint, Dkt. 13 at 4-56, and his supplemental complaint, Dkts. 200, 200-1.

2.      The Court notes the parties shall abide by the March 19, 2024 Service Order (Dkt. 50), in which the Court found that Lewis's allegations in his amended complaint stated a cognizable Eighth Amendment claim against Defendants French, Escobedo, Vitela, and Ventura, as well as a cognizable retaliation claim against Defendant French.  Dkt. 50 at 6-8, 11.  The Court found Lewis also asserted a supplementary state law claim that the actions of Defendants Allen and the CDCR were negligent.  *See id.* at 13.

3.      All claims against Defendants in their official capacity are **DISMISSED WITH PREJUDICE.**  Because Lewis only names Defendants Newsom and Broomfield in their official capacities, all his claims against them are **DISMISSED WITH PREJUDICE.**

4.      Lewis's allegations in his supplemental complaint relating to the actions of Defendants Martinez, Garcia, Vallejo, Roach, Ortiz, Silva, Bertelli, Tanori, Lopez, Ricon, Bock, and Cruiel state a cognizable Eighth Amendment claim stemming from their deliberate indifference to Lewis's safety needs during his transport to and from CTC medical in 2023 to 2024.

5.      Lewis had previously stated a cognizable constitutional claim against Defendant French, but the Court finds Lewis has stated another cognizable retaliation claim against Defendant French stemming from the June 2024 incident.  However, Lewis's allegations

regarding Defendants Ortiz, Silva, Bertelli, and Garcia's motivation for their statements on July 4, 2024 are either unstated or, at best, speculative. Because Lewis has not plausible alleged that Defendants Ortiz, Silva, Bertelli, and Garcia acted on July 4, 2024 as a result of Lewis's constitutionally protected activity, any retaliation claim against these defendants is **DISMISSED** for failure to state a plausible claim.

6. Lewis also states cognizable supervisory liability claims against Defendants Allen, Borla, Lomeli, Moseley, Gipson, Beresario/Besorosia, Williams, and Galindo. The Court **DISMISSES** all supervisory liability claims against Defendants Newsom, Diaz, McComber, Medina and Acre without further leave to amend for failure to allege supervisory liability of these supervisory defendants under the requisite standards. The Court also **DISMISSES** all municipal liability claims against any named defendant without further leave to amend for failure to allege municipal liability under the requisite standards.

7. Because Lewis has not timely filed certain amended claims pursuant to the Court's March 19, 2024 Order, the following claims are **DISMISSED:** Lewis's disability discrimination claim, equal protection claim, and retaliation claim against Defendants Ventura and Vitela.

8. The Court will also exercise supplemental jurisdiction over Lewis's state law claims against Defendants French, Escobedo, Ventura, Vitela, Martinez, Garcia, Vallejo, Roach, Ortiz, Silva, Bertelli, Tanori, Lopez, Ricon, Bock, and Cruiel stemming from these incidents.

9. The following Defendants shall be served at SVSP: **Associate Wardens E. Borla; Captain Lomeli, Lt. Beresario/Besorosia; Associate Director H. Moseley; Sergeant D. L. Williams and B. Galindo; Registered Nurse Bertelli; and Transportation Officers J. Martinez, J. Garcia; Vallejo, S. Roach, J. Ortiz, Silva, Tanori, J. Lopez, Ricon, K. Bock and Cruiel.**

10. Service on the listed defendant(s) shall proceed under the CDCR's e-service pilot program for civil rights cases from prisoners in CDCR custody. In accordance with the program, the Clerk of the Court is directed to serve on CDCR via email the following documents: the operative complaints (Lewis's amended complaint, Dkt. 13 at 4-56, and his supplemental complaint, Dkts. 200, 200-1), the March 19, 2024 order of service, this order, a CDCR Report of

United States District Court
Northern District of California

20

E-Service Waiver form and a summons.  The Clerk shall serve by mail a copy of this order on the plaintiff.

No later than **forty (40) days** after service of this order via email on CDCR, CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service (USMS) and which defendant(s) decline to waive service or could not be reached.  CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office, which, within **twenty-one (21) days**, shall file with the court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form.  The Clerk shall provide to the USMS the completed USM-205 form and copies of this order, summons, and operative complaint for service upon each defendant who has not waived service.  The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

11.     No later than **twenty-eight (28) days** from the date of this Order, the previously-served and newly-served defendants shall answer the operative complaints in accordance with the Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive motions in this action:

a.     No later than **sixty (60) days** from the date their answer is due, the defendants shall file a motion for summary judgment or other dispositive motion.  The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue.  A motion for summary judgment also must be accompanied by a *Rand*[11] notice so that the plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion.  *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice

---

[11] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

requirement set out in *Rand* must be served concurrently with motion for summary judgment).  A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice.  However, the Court notes that under this Circuit's case law, in the rare event that a failure to exhaust is clear on the face of the operative complaints, the defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion).  Otherwise, if a failure to exhaust is not clear on the face of the operative complaints, the defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56.  *Id.* If undisputed evidence viewed in the light most favorable to the plaintiff shows a failure to exhaust, the defendants are entitled to summary judgment under Rule 56.  *Id.*  But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding.  *Id.* at 1168.

If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants shall so inform the Court at least **seven (7) days** prior to the date the summary judgment motion is due.  All papers filed with the Court shall be promptly served on the plaintiff.

b.	The plaintiff's opposition to the dispositive motion shall be filed with the Court and served on the defendants no later than **twenty-eight (28) days** after the date on which the defendants' motion is filed.

c.	The plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing

22

makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your operative complaints say. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

The plaintiff also is advised that—in the rare event that the defendants argue that the failure to exhaust is clear on the face of the operative complaints—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents— documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your operative complaints insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse the defendants' obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

d.      The defendants shall file a reply brief no later than **fourteen (14) days** after the date the plaintiff's opposition is filed.

e.      The motion shall be deemed submitted as of the date the reply brief is due.

No hearing will be held on the motion unless the Court so orders at a later date.

12.     Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure.  Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to the defendants to depose the plaintiff and any other necessary witnesses confined in prison.

13.     All communications by the plaintiff with the Court must be served on the defendants' counsel by mailing a true copy of the document to them.

14.     It is the plaintiff's responsibility to prosecute this case.  The plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion.  Pursuant to Northern District Local Rule 3-11, a self-represented party whose address changes while an action is pending must promptly file a notice of change of address specifying the new address.  *See* L.R. 3-11(a).  The Court may dismiss without prejudice a complaint when: (1) mail directed to the self-represented party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the self-represented party indicating a current address.  *See* L.R. 3-11(b).

15.     Future requests for extensions of time must be submitted at least **seven (7) days** prior to the expiration of a deadline, as required by Section D.2 of the Court's Standing Order for Civil Cases.

16.     Absent extraordinary circumstances, Lewis is directed not to file any further pleadings in this action until ***after*** (1) the Court instructs him to do so or (2) he has been served with Defendants' dispositive motion.  This does not mean that Lewis is prohibited from filing additional pleadings before then, but the Court directs Lewis to refrain from filing duplicate documents or any similar unsolicited filings.

**IT IS SO ORDERED.**

Dated: February 24, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

24